UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Fred Perez,

    *Plaintiff*,

v.

Home Depot Corporation, *et al.*,

    *Defendants*.

No. 24 CV 8123

Judge Lindsay C. Jenkins

MEMORANDUM OPINION AND ORDER

Fred Perez fell victim to an assault in a Home Depot parking lot. Asserting that Home Depot acted negligently by failing to deter the allegedly intoxicated individual who carried out the assault, Perez filed suit against the store and its CEO, Edward Decker. Defendants filed a motion for summary judgment. [Dkt. 49.][1] Because Perez's attack was not reasonably foreseeable, the court grants Defendants' motion.

## I.    Background

The court draws on the parties' Local Rule 56.1 statements to recount the facts, which are undisputed except where otherwise noted. [Dkts. 89, 96.] The court views the record in the light most favorable to Perez. See *Johnson v. Accenture LLP*, 142 F.4th 536, 540 (7th Cir. 2025).

In September 2022, Perez and his colleague, Hector, went to a Home Depot located at 4555 South Western Boulevard in Chicago around 9:30 a.m. to purchase supplies for a job the two planned to complete that day. [Dkt. 98, ¶¶ 6–8.] When Perez arrived at the Home Depot, he observed a man, later identified as Oscar, drinking beer in the store's parking lot with three or four other people. [Dkt. 99 at 37.] According to Perez, Oscar replenished his beer stash throughout the day by sending "beer runners across the street to purchase Modelo and Corona beers at Walgreens." [*Id.* at 39.]

After making a purchase, Perez and Hector left the Home Depot parking lot and proceeded to their job site between 12:30 and 1 p.m. [Dkt. 98, ¶ 9.] But they returned to the Home Depot parking lot around 3:30 to 4 p.m. to purchase additional work materials. [*Id.*, ¶ 12.] At that time, Hector parked at the back of the Home Depot parking lot, near a BP gas station. [*Id.*, ¶ 13.] Perez then walked to a nearby gas

---

[1]    Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

1

station (not the BP) to purchase a drink and make a phone call. [*Id.*, ¶ 15.] Hector told Perez to meet him at a specific spot in the Home Depot parking lot once Perez finished at the gas station so the two could drive closer to the storefront and purchase the supplies together. [*Id.*, ¶ 16.]

Not long after, Perez left the gas station and began making his way toward Hector. [*Id.*, ¶ 17.] Before Perez made it to Hector, however, Oscar—still drinking in the Home Depot parking lot—began yelling obscenities at Perez and told him he was not welcome there. [*Id.*, ¶ 17.] At this point, Perez was standing in Home Depot's parking lot about 15 feet away from the BP gas station and about 35 feet from the Advance Auto Parts store, near a gate that divides the Home Depot parking lot from those businesses. [*Id.*, ¶ 18.] Oscar struck Perez in the nose and mouth and Perez retreated to the Advance Auto Parts store. [*Id.*, ¶ 19.] Oscar followed him and began striking him again. [*Id.*, ¶ 20.] Perez walked to the BP gas station to catch his breath. [*Id.*] But Oscar eventually followed him with another man and continued the attack on Perez, this time stabbing him in the face and neck regions and causing him to black out. [*Id.*, ¶ 21.] The stabbing took place in a grassy area of the Home Depot parking lot between the BP gas station and Advance Auto Parts store. [*Id.*, ¶ 22.]

According to Perez, Home Depot created a dangerous environment by "allowing vagrants and residents of Illinois to consume alcoholic beverages for a period of 8 hours or more" without being deterred or told to leave. [*Id.*, ¶ 29.] Perez has witnessed other fights in the parking lot, and a Home Depot security guard was shot there in 2021. [*Id.*, ¶ 24.] The area surrounding the Home Depot, moreover, has high crime rates. [*Id.*, ¶ 23.]

## II.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). "An inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage, nor is a conceivable inference necessarily reasonable at summary judgment." *Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 571 (7th Cir. 2022) (cleaned up).

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dept' of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). A party opposing summary

judgment must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex*, 477 U.S. at 322).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252.

## III. Analysis

"The elements of a negligence cause of action are a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach." *Johnson v. Armstrong*, 211 N.E.3d 355, 371 (Ill. 2022). A plaintiff's failure to prove even one of these three elements dooms the claim. So the court begins and ends its analysis with proximate cause.

Both proximate cause and duty assess whether an injury is foreseeable. See *Scott v. Wendy's Props., LLC*, 131 F.4th 815, 821 (7th Cir. 2025). And while some courts have recognized a distinction between foreseeability in the context of duty and foreseeability for proximate cause, the Seventh Circuit has recently observed that "Illinois Supreme Court decisions at times suggest it is permissible to blend 'foreseeability' across duty and legal cause." *Id.* So following the Seventh Circuit's lead, this court considers Illinois cases discussing "foreseeability" with regard to duty while analyzing proximate cause. *Id.*

When deciding whether a defendant prevails, as a matter of law, against a plaintiff who alleged injuries from a third-party present on the defendant's premises, Illinois cases generally fall into one of three camps relevant here. *Id.* at 820.

*First*, where the defendant "affirmatively knows" that the third-party plans to carry out an assault or has a "propensity for fighting," it is reasonably foreseeable that the third-party on the defendant's premises could cause injury to other patrons. *Id.* at 820. In *Shortall v. Hawkeye's Bar and Grill*, for example, a bartender saw three men verbally and physically harassing the plaintiff inside the bar. 670 N.E.2d 768, 769 (Ill. App. Ct. 1996). The three men and the plaintiff exited the bar around the same time, and a fistfight broke out between them directly outside the bar's window as the bar's bouncer looked on. *Id.* at 770. Because the bar's employees witnessed the developing altercation, the court held that the attack was foreseeable. *Id.* at 771; see

*Cooke v. Maxum Sports Bar & Grill, Ltd.*, 109 N.E.3d 811, 827 (Ill. App. Ct. 2018); *Osborne v. Stages Music Hall, Inc.*, 726 N.E.2d 728, 734 (Ill. App. Ct. 2000).

*Second*, where "circumstances such as prior incidents give the [defendant] knowledge of the danger facing [its] patrons," it is, of course, foreseeable that such danger could cause a plaintiff's injuries. *Witcher v. 1104 Madison St. Rest.*, 139 N.E.3d 694, 697 (Ill. App. Ct. 2019). In *Rowe v. State Bank of Lombard*, the Supreme Court of Illinois held that a landlord was liable for injuries to his tenant's employee when an intruder entered the building with a master key and shot an employee working in the building. See 531 N.E.2d 1358, 1360 (Ill. 1988). Critical to the court's analysis were 17 incidents of criminal activity that occurred at the complex in the preceding two years, including burglaries with no sign of forced entry. *Id.* at 1369. While the building had not experienced shootings or assaults, the Court reasoned that burglaries present "a high risk of personal injury or death if the intruder is confronted," and found it relevant that the landlord often had inadequate control of the master keys. *Id.*

Contrast *Rowe* with *Kolodziejzak v. Melvin Simon & Associates*. See 685 N.E.2d 985, 986 (Ill. App. Ct. 1997). In *Kolodziejzak*, a security guard was shot and killed by a gang member in Yards Plaza, a strip mall in Chicago. *Id.* at 987. The plaintiff argued that the shooting was foreseeable because prior crimes and gang activity had occurred on the premises. *Id.* at 990. The court disagreed. *Id.* While the mall had experienced recurring theft and a few armed robberies, none of the previous crimes involved gang violence. *Id.* So, the court reasoned, the prior crimes did not put the mall's property manager on "notice of the likelihood that a gang member would enter Yards Plaza's premises with a gun and shoot an innocent person." *Id.*

*Kolodziejzak*, then, is an example of the third camp of cases—those where the defendant has no knowledge of the attacker's propensity toward or plans for violence and "the type of crimes or past harms known to occur do not have a remote resemblance to plaintiff's tort," making the injury unforeseeable. *Scott*, 131 F.4th at 820 (unprovoked shooting of a Wendy's drive-thru customer was not foreseeable despite high crime area and evidence of nearby shootings and car jackings); see *Witcher*, 139 N.E.3d at 700 (random, violent stabbing not foreseeable despite previous batteries and assaults occurring on the premises); *Davis v. Allhands*, 643 N.E.2d 856, 862 (Ill. App. Ct. 1994) (no duty on the bar to employ additional security personnel even though the bar had four fights in 90 days).

This case falls squarely within the third camp. Oscar's attack on Perez, though unfortunate, was not foreseeable. Perez provides no evidence that Oscar exhibited any violent behavior before his attack, let alone that Home Depot was aware of such behavior. Nor does he assert that any Home Depot employees witnessed the altercation. And on Perez's account, Oscar approached him and began verbal harassment before quickly escalating to violence.

4

Perez argues that Home Depot was at fault because it allowed Oscar to consume alcohol in the parking lot for eight hours. Not only does Perez offer no evidence that Home Depot knew of Oscar's intoxication, but knowledge of a patron's intoxication, without more, is insufficient to establish foreseeability of a future assault, particularly when the intoxicated patron remained in the parking lot for eight hours without causing any issues. See *Davis*, 643 N.E.2d at 863 ("Knowledge of an aggressor's intoxication, and knowledge that the aggressor may have given the employees some 'back talk,' has been held not sufficient to give rise to a duty to take affirmative action to protect a tavern's patrons.").

Referencing news articles, Perez asserts that Oscar's assault was foreseeable because (1) a Home Depot security guard and police officer were shot on Home Depot property in 2021, (2) a police officer discharged his weapon on an armed individual in the vicinity of Home Depot in 2023, and (3) Home Depot security guards allegedly assaulted migrants in the Home Depot parking lot in August 2024. [Dkt. 99 at 10–11.] Putting aside the admissibility of Perez's proffered news articles, these prior incidents are insufficient to provide notice to Home Depot of Oscar's assault.

While the court can't glean much from the excerpts of news articles, *cf Witcher*, 139 N.E.3d at 699 ("The incident report does not detail the disposition of the reported incident, i.e. was the report unfounded, were charges filed, et cetera. The descriptions of the reported crimes in the incident report contain one-word descriptions, providing no context to illuminate plaintiff's theory of a dangerous establishment where all matters of crime should have been foreseen."), each of the incidents Perez points to involve altercations with police officers and security guards. The incidents do not, in other words, involve situations where one patron suddenly and violently attacks another patron for seemingly no reason on the outskirts of the store's parking lot. And Perez's general assertion that the Home Depot is located in a high crime area fares no better. See *Popp v. Cash Station, Inc.*, 613 N.E.2d 1150, 1153 (Ill. App. Ct. 1992) ("Generalized allegations of crime will not suffice to establish that future criminal attacks are foreseeable.").

Perez himself describes a random, unprovoked assault. [Dkt. 51-2 at 14–15 (Perez explaining that he "didn't do anything to cause" Oscar's assault and never had problems with Oscar before).] And as the Seventh Circuit and Illinois precedent has made clear, "unprovoked, extreme acts of violence are usually unpredictable as a matter of law." *Scott.,* 131 F.4th at 823. Because Perez cannot establish proximate cause, his negligence claim—whether grounded in premises liability or ordinary negligence—fails.[2]

---

[2] Perez's negligence claim against Defendant Decker fails for several reasons. First, and most obvious, Perez has not established that Oscar's attack was foreseeable, so he has not demonstrated negligence liability against any actor. Second, as a corporate officer, Decker is

## IV. Conclusion

For these reasons, the court awards summary judgment to Home Depot.

Enter: 24-cv-8123
Date:   March 27, 2026

_____

Lindsay C. Jenkins

---

"insulated from personal liability for negligence of the corporation unless he participated in the wrongful act or had such knowledge thereof as to give rise to liability." *Zahl v. Krupa*, 927 N.E.2d 262, 279 (Ill. App. Ct. 2010) (quoting *McDonald v. Frontier Lanes, Inc.*, 272 N.E.2d 369 (Ill. App. Ct. 1971)). And Perez has not provided any evidence of Decker's involvement in the alleged negligence. Third, Decker was never server with process within the time required by Fed. R. Civ. P. 4(m).